**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| NATALIE ISENSEE, | : | |
| | : | CASE NO. 3:22-cv-000370-TMR-CHG |
| Plaintiff | : | |
| v. | : | JUDGE THOMAS M. ROSE |
| | : | |
| AMPLITY, INC. | : | MAGISTRATE JUDGE CAROLINE H. GENTRY |
| | : | |
| Defendant. | : | |

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Amplity, Inc. ("Defendant") respectfully moves this Court for summary judgment on all claims asserted by Plaintiff Natalie Isensee ("Plaintiff") in her Complaint. The two claims asserted in the Complaint are failure to accommodate under Title VII and O.R.C. Sec. 4112.

Summary judgment should be granted in favor of Defendant on both claims because there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Plaintiff admits that she held a customer facing sales position with Defendant. In 2021, due to the availability of the COVID-19 vaccine and customer demands, Defendant implemented a mandatory COVID-19 vaccination policy. In fact, Plaintiff sold pharmaceutical products for a third party who contracted with Defendant for a professional sales team and this third party mandated Defendant to again sell its products in-person to customers. Plaintiff's customers included cancer centers – patients with a particular risk from COVID-19.

Plaintiff was given the opportunity to locate alternative, non-customer facing positions or to obtain the COVID-19 vaccination. Ultimately, based primarily on internet research, Plaintiff made the personal decision not to obtain the COVID-19 vaccination. Accordingly, Plaintiff's claims fail because she cannot prove that she has a sincerely held religious belief, she was

1

accommodated by Defendant through the opportunity to find an alternative position, and it would be an undue hardship to require Defendant to change the essential functions of Plaintiff's sales position and potentially breach its contract with its customer to accommodate Plaintiff's religious beliefs. *Stanley v. ExpressJet Airlines, Inc.*, 808 F.App'x 351, 355-356 (6th Cir. 2020).

This Motion is supported by the attached Memorandum in Support, the deposition of Plaintiff and the Declaration of Karen McAndrews.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Andrea Hofer (0101258)
Gordon Rees Scully Mansukhani, LLP
600 Superior Ave., East
Suite 1300
Cleveland, OH 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
Email: dcampbell@grsm.com
ahofer@grsm.com

*Attorneys for Defendant*

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

Plaintiff Natalie Isensee ("Plaintiff") is a former employee of Defendant Amplity, Inc. ("Defendant"). Relevant to this Motion, Plaintiff held the position of Immunology Specialty Representative with Defendant. Plaintiff admits that this is a customer-facing position that sold rheumatology and oncology pharmaceutical products in-person to health care providers in various office settings, including private practices, hospitals, infusion centers and others (collectively, "HCPs"). Plaintiff sold products to HCPs on behalf of a third party, Organon, that contracted with Defendant for a professional sales team for its products.

At the start of the Covid-19 pandemic and "lock-down", HCPs did not allow pharmaceutical sales representatives, like Plaintiff, from visiting their offices in-person and Plaintiff, like most other representative in the industry, transitioned to a fully remote position over the internet using conference applications like Zoom or Microsoft Teams. In 2021, after the COVID-19 vaccination became widely available, HCP offices again began allowing representatives to visit in person and as a means of doing so safely, Defendant implemented a mandatory, COVID-19 vaccination policy and informed Plaintiff and other similarly situated employees. As to Plaintiff, Organon notified Defendant that it expected that Defendant's professional sale team would once again return to in-person sales like Organon's competitors. Plaintiff had the opportunity to seek out non-customer facing positions that would permit her to continue her employment with Defendant without the COVID-19 vaccination. Ultimately, Plaintiff could not find an alternative position and she decided not to obtain the COVID-19 vaccination. Accordingly, Plaintiff's employment was terminated. Plaintiff admits that all similarly-situated employees were treated the same as her under the policy, whether their reason

1

for not wanting the vaccine was religiously base, medically based, or based on other information which caused distrust of the vaccines.

Summary judgment should be entered in favor of Defendant on both claims asserted by Plaintiff. Plaintiff's claim fails because she cannot prove that she has a sincerely held religious belief, she was accommodated by Defendant through the opportunity to find an alternative position, and it would be an undue hardship to require Defendant to change the essential functions of Plaintiff's sales position and potentially breach its contract with its customer to accommodate Plaintiff's religious beliefs. *Stanley v. ExpressJet Airlines, Inc.*, 808 F.App'x 351, 355-356 (6th Cir. 2020).

## II. RELEVANT AND UNDISPUTED FACTS

The facts in this matter are simple and straightforward. The following statement of facts is based on Plaintiff's deposition transcript (cited pages attached as Exhibit 1) and the Declaration of Karen McAndrews (attached as Exhibit 2).

### A. Plaintiff's Employment With Defendant.

Defendant is a Contract Medical and Commercial Organization that provides services to the pharmaceutical industry. (Declaration of Karen McAndrews at 2 (hereinafter "Dec. at __")). In simple terms, Defendant is a healthcare company that partners with global healthcare companies to build transformational solutions. (Deposition of Plaintiff at Ex. 5, pg. 5 (hereinafter "Dep. Plaintiff at __")); (Dec. at 3).

One example of Defendant's partnering relevant to this lawsuit is between Defendant and Organon. (Dec. at 4). Organon is a global pharmaceutical company with a portfolio of therapies and products in women's health, biosimilars, and established brands across a wide array of

conditions and diseases. (Dec. at 4). Defendant's contract with Organon required Defendant to market and sell Organon's products through Defendant's professional sales team. (Dec. at 5-6).

Plaintiff was employed by Defendant from January 4, 2020 through December 10, 2021. (Dep. Plaintiff at 56). Plaintiff received a copy of Defendant's employee handbook. (Dep. Plaintiff at 55 and Ex. 5). Plaintiff admits that Defendant's policies prohibit religious discrimination. (Dep. Plaintiff at 41, Ex. 4, pg. 29, and Ex. 5). Plaintiff also admitted that she was aware of Defendant's complaint procedures. (Dep. Plaintiff at 55, Ex. 4, pg. 29, and Ex. 5). Finally, Plaintiff admits that she never suffered any discrimination during her employment with Defendant (aside from her separation at issue in this lawsuit) and she had no problems with her supervisors. (Dep. Plaintiff at 55 and 57).

**B.**     **Plaintiff Held A Customer Facing Position With Defendant.**

Plaintiff held the Immunology Specialty Representative position with Defendant. (Dep. Plaintiff at 83 and Ex. 9); (Dec. at 8). This position is also referred to by Defendant as a Biosimilar Account Specialist. (Dec. at 9). Plaintiff held this position throughout her employment with Defendant. (Dep. Plaintiff at 56).

Plaintiff admits that her Immunology Specialty Representative position was HCP-facing prior to the COVID-19 Pandemic. (Dep. Plaintiff at 42). Prior to the COVID-19 Pandemic, Plaintiff admitted that she visited HCPs on a regular basis. (Dep. Plaintiff at 84). In fact, Plaintiff's admission responses verify her deposition testimony:

> REQUEST FOR ADMISSION NO. 4
> Admit that the Biosimilar Account Specialist position is customer-facing.
> ANSWER:
> Admit
>
> REQUEST FOR ADMISSION NO. 5
> Admit that you visited customers as a Biosimilar Account Specialist.

3

      ANSWER:
      Admit

(Dep. Plaintiff at Ex. 4, pg. 29).

Plaintiff was part of Defendant's sales team for Organon. (Dec. at 7). Plaintiff's sales position sold Organon pharmaceutical products. (Dep. Plaintiff at 44-45). Plaintiff was responsible for selling Organon products that treated cancer and rheumatology. (Dep. Plaintiff at 84.). Some of Plaintiff's HCP customers included cancer centers where she offered cancer-related Organon products. (Dec. at 11-12).

    **C.**    **Defendant Implemented A Mandatory COVID-19 Vaccination Policy In 2021 When Its Employees Returned To Customer Sites.**

On October 5, 2021, as the COVID-19 vaccine became widely available to the American public and healthcare providers were again permitting vendors to enter their offices, Defendant implemented its mandatory, COVID-19 vaccination policy (the "Policy"). (Dep. Plaintiff at Ex. 7); (Dec. at 14-15). Prior to implementation of the Policy, Defendant surveyed its employees on the potential for such a policy. (Dep. Plaintiff at Ex. 7). In addition, Plaintiff recalls that her supervisor advised Plaintiff's sales team of the potential for such a policy prior to its formal implementation. (Dep. Plaintiff at 58).

The Policy was implemented, in part, due to customer demands and restrictions. (Dec. at 14). For example, Organon informed Defendant that it expected the Organon sales team (employees of Defendant) to return to in-person sales efforts in 2021. (Dec. at 14). Organon considered in-person sales to be a term of its contract with Defendant. (Dec. at 14). Plaintiff further admits that Organon implemented a mandatory COVID-19 vaccination policy for its employees. (Dep. Plaintiff at 45 and Ex. 12). Plaintiff also admits that she was aware of other customers that implemented similar policies. (Dep. Plaintiff at 44).

4

In order to verify consistency when administering the Policy, Defendant created a three member Exemption Review Board to review exemption requests. (Dep. Plaintiff at Ex. 12); (Dec. at 17). Defendant's employees who were in fully remote positions were eligible to be accommodated without the COVID-19 vaccination. (Dec. at 16). As to HCP customer-facing positions, Plaintiff admits that all of her co-workers holding her position were treated in a consistent manner to Plaintiff. (Dep. Plaintiff at 28). Defendant reviewed the HCP customer-facing positions and determined that employees holding these positions could not be accommodated without the COVID-19 vaccination for the following reasons: (1) In person visits were an essential function of these positions; (2) In-person visits, as perceived at that time, without the COVID-19 vaccination placed healthcare providers, their patients, and other third parties at risk; (3) Defendant's contracts required in-person sales calls and the failure to perform these in-person sales calls would breach Defendant's contracts; (4) Defendant did not have the staff to fill in for non-vaccinated employees on HCP visits; and (5) it was administratively impossible to keep up with the vaccination policies for the thousands of customers Defendant solicited. (Dec. at 28).

**D.    Plaintiff's Exemption Request Under The Policy.**

The Policy provided Plaintiff and other employees with eight weeks to either gain an exemption, find an alternative position, or get vaccinated. (Dep. Plaintiff at Ex. 7). On October 7, 2021, Plaintiff submitted an exemption request based on religion. (Dep. Plaintiff at Ex. 8).

The exemption request does not identify Plaintiff's religion. (Dep. Plaintiff at Ex. 8). Rather, the exemption request cites the bible, case law, and COVID-19 vaccine research. (Dep. Plaintiff at Ex. 8). Plaintiff admits that the exemption request, in part, is cut and pasted from internet exemption samples. (Dep. Plaintiff at 68-69). The COVID-19 research was based on Plaintiff's internet research. (Dep. Plaintiff at 74).

Plaintiff communicated with Karen McAndrews, an HR Business Partner, with respect to her exemption request. (Dep. Plaintiff at 82); (Dec. at 19-23). Plaintiff admits that she sought alternative positions through McAndrews. (Dep. Plaintiff at 87 and Ex. 10). Ultimately, there were no fully remote positions available to Plaintiff. (Dep. Plaintiff at Ex. 10). As to the exemption request, Defendant asked Plaintiff to provide additional information to support her sincerely held religious belief. (Dep. Plaintiff at 87-88 and Ex. 12). Plaintiff admits that she failed to submit the additional information. (Dep. Plaintiff at 90 and Ex. 12).

In addition, Plaintiff admits that she met and conferred with McAndrews on the request for an accommodation. (Dep. Plaintiff at 51). Plaintiff was advised that because her position was HCP customer-facing, she could not be accommodated without a COVID-19 vaccine in that position. (Dep. Plaintiff at Ex. 12); (Dec. at 26). Due to Plaintiff's HCP customer-facing role, the Board determined that Plaintiff could not be accommodated in her HCP customer-facing position without the COVID-19 vaccination. (Dec. at 26). The following reasons were communicated to Plaintiff:

- Plaintiff's position required regular in-person engagements with healthcare providers in medical offices and facilities to successfully perform in the job;

- Defendant faced legal risks if it permitted non-vaccinated employees to enter healthcare provider locations. For example, Plaintiff was selling to cancer centers and the spread of COVID-19 into these centers could be harmful to the patients;

- Customer targets in Plaintiff's sales territory required COVID-19 vaccinations at the time or were quickly moving to such a requirement;

- In-person customer visits were essential to Plaintiff's position; and

- Effective November 24, 2024, Organon required Defendant's employees who visited healthcare facilities on behalf of Organon to be fully vaccinated.

6

(Dep. Plaintiff at Ex. 12); (Dec. at 26).

### E. Plaintiff's Expanded Religious Exemption Facts In This Lawsuit.

Plaintiff now alleges that she is "nondenominational Christian." (Dep. Plaintiff at 24). Plaintiff explains that she is Christian, but she is not part of a Christian denomination. (Dep. Plaintiff at 24).

Plaintiff has attended different houses of worship at times relevant to this lawsuit. (Dep. Plaintiff at 38-39). Plaintiff's church in 2021 did not take a position on the COVID-19 vaccination. (Dep. Plaintiff at 71). In addition, there was nothing said about the COVID-19 vaccine in the church sessions attended by Plaintiff. (Dep. Plaintiff at 72). Plaintiff admits that she has never turned down a medical procedure based on her religious beliefs. (Dep. Plaintiff at 66).

Plaintiff learned of COVID-19 vaccine side effects from friends and the internet. (Dep. Plaintiff at 65). Plaintiff further alleges that she tried to learn what was in the COVID-19 vaccine, but was not successful. (Dep. Plaintiff at 65). Ultimately, Plaintiff explained that she does a cost-benefit analysis when faced with medical issues:

> THE WITNESS: Ultimately, I weigh out the risk based on all of the information that I am given from my physician and to see if it's going to help me in the long run or if I can do it alternatively based on diet or exercise, and I make that choice one-on-one.

(Dep. Plaintiff at 78).

## III. ARGUMENT

### A. Standard Of Review.

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 255. However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Id.* at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id.*

### B. <u>Plaintiff's Religious Discrimination Claim Fails As A Matter Of Law.</u>

Plaintiff asserts failure to accommodate claims, based on her religion, under Title VII and O.R.C. Sec. 4112. Both claims are reviewed under the same legal standard. *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89, 93 (1004).

To succeed on a Title VII failure to accommodate claim, Plaintiffs must show: "(1) that the employee holds a sincere religious belief that conflicts with an employment requirement, (2) that

8

the employee informed the employer about the conflict, and (3) that the employee was discharged or disciplined for failing to comply with the requirement." *Stanley v. ExpressJet Airlines, Inc.*, 808 F.App'x 351, 355-356 (6th Cir. 2020). If Plaintiff can prove a prima facie case, the burden shifts to Defendant to show that the religious practice would cause an "undue hardship on the conduct of the employer's business." 42 U.S.C.S. § 2000e(j); *Virts v. Consolidated Freightways Corporation of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002). In this matter, summary judgment should be granted in favor of Defendant because Plaintiff cannot prove a prima facie case and Defendant can prove an undue burden.

### 1. Plaintiff cannot prove a sincerely held religious belief.

Federal courts have "differentiated between those whose views were religious in nature and those whose views were 'essentially political, sociological, or philosophical,' stating, 'no court should inquire into the validity or plausibility of the beliefs; instead, the task of a court is "to decide whether the beliefs professed by a registrant are sincerely held and whether they are in [the believer's] own scheme of things, religious.'" *Lawhead v. Brookwood Management Co., LLC*, Case No. 5:22-cv-00996-JRA, 2023 WL 2691718 *4 (N.D. Ohio March 29, 2023) (*citing Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490-491 *3rd Cir. 2017)).

In *Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458 (M.D.Pa. 2022), the District Court recently addressed a plaintiff's claim based on religious belief allegations similar to those asserted by Plaintiff. Specifically, the plaintiff in *Finkbeiner* alleged that she was exempt from the COVID-19 vaccine based on her Christian status:

> I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me. The Bible says that man has free will and I am using my free will, granted to me by God, to reject the vaccine. I have faith in my own immune system and the ability for my own body to heal itself. With the 99% plus survival rate from Covid, I do not feel injecting

9

>> chemicals into my body is a better choice than what my own immune system can do with fighting this virus, should I contract Covid.

*Id.* at 463. The plaintiff further supplemented her statement with bible verses and alleged health concerns arising from the vaccination. *Id.*

The *Finkbeiner* court found that Plaintiff's theory of religious freedom "would amount to a 'blanket privilege' and a 'limitless excuse for avoiding all unwanted. . . . obligations.'" *Id.* at 465 (*citing Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025, 1030-1031 (3rd Cir. 1981)). Moreover, the court found that "her statement only reinforces that her opposition stems from her medical beliefs," not sincerely held religious beliefs. *Id.* at 466. Based on these holdings, the plaintiff's state and federal religious discrimination claims were dismissed with prejudice. *Id.*

The *Finkbeiner* analysis was recently adopted by a district court in this Circuit. *Devore v. University of Kentucky Board of Trustees*, Case No. 5:22-cv-00816-GFVT-EBA, 2023 WL 6150773 *3-5 (E.D. Ky. Sept. 20, 2023). The plaintiff in *Devore* also argued that free choice was a God given right protected by state and federal law. *Id.* *3. The *Devore* court dismissed the religious discrimination claim, finding that the plaintiff's view was "not a religious belief but rather an isolated moral teaching." *Id.* at *4.

In this matter, Plaintiff seeks to exercise her free will through her cost-benefit analysis. (Dep. Plaintiff at78). Plaintiff learned of COVID-19 vaccine side effects from friends and the internet. (Dep. Plaintiff at 65). Plaintiff further alleges that she tried to learn what was in the COVID-19 vaccine, but was not successful. (Dep. Plaintiff at 65). These facts simply do not prove that Plaintiff has a religious view that conflicts with Defendant's COVID-19 vaccination policy. Rather, Plaintiff simply objects on scientific and moral grounds that are masked in bible verses. *Friend v. AstraZeneca Pharm LP,* No. SAG-22-03308, 2023 WL 3390820 *3 (D. Md.

May 11, 2023) (holding that assertions that "are little more than a declaration that Plaintiff has the right to make his own decisions[ ] do not constitute religious beliefs, even where religion is more expressly invoked").

### 2. Plaintiff was accommodated through the alternative job opportunities.

In this matter, whether Plaintiff can prove a prima facie case, her claim fails because Plaintiff was given a reasonable accommodation – the opportunity to seek out alternative positions within Defendant. Such an opportunity has been found reasonable as a matter of law. *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993) (giving employee opportunity to bid on jobs that would have accommodated his religious practice was reasonable accommodation); *Bruff v. North Mississippi Health Servs., Inc.*, 244 F.3d 495, 502 (5th Cir. 2001) (offering to give employee 30 days to find another position that would not conflict with religious beliefs was reasonable accommodation); *Shelton v. University of Medicine & Dentistry of New Jersey*, 223 F.3d 220, 227 (3d Cir. 2000) (offering to meet with employee to discuss other available positions that would resolve religious conflict was reasonable accommodation); *Telfair v. Federal Express Corp.*, 567 F. App'x 681, 684 (11th Cir. 2014) (giving employees opportunity to apply for open positions was reasonable accommodation).

In this matter, the vaccination policy provided Plaintiff and other employees with eight weeks to either gain an exemption, find an alternative position, or get vaccinated. (Dep. Plaintiff at Ex. 7). Plaintiff admits that she sought and applied for an alternative position through McAndrews. (Dep. Plaintiff at 87 and Ex. 10). Accordingly, because Defendant provided Plaintiff with two months to find an alternative position with Defendant that could accommodate her religious views, Plaintiff was accommodated, as a matter of law, and her claims fail as a matter of law.

11

### 3. Defendant can establish its undue hardship.

If Plaintiff is able to satisfy his *prima facie* case, then the burden shifts to Defendant to prove that it could not accommodate Plaintiff's religious belief or practice without causing undue hardship. Whether an accommodation request presents an undue hardship is a fact-specific inquiry that requires an examination of the specific circumstances of the job in question. *See Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 884 (7th Cir. 2023). The Supreme Court in *Groff* recently held that a requested accommodation presents an undue hardship when it creates a substantial burden with respect to the employer's overall business. *Groff v. Dejoy*, 143 S.Ct. 2279, 2294 (2023); *see also Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 884 (7th Cir. 2023) (citing *TWA v. Hardison*, 432 U.S. 63 (June 16, 1977)). "The relevant costs may include not only monetary costs but also the employer's burden in conducting its business." *EEOC v. Oak-Rite Mfg. Corp.,* CAUSE NO. IP 99-1962-C H/G, 2001 U.S. Dist. LEXIS 15621, *29-30 (S.D. Ind. Aug. 27, 2001). "The inquiry ultimately boils down to whether the employer acted reasonably." *Id.* at *30. Finally, "[a]n employee is not entitled to the accommodation of her choice, but only a reasonable accommodation." *Prida v. Option Care Enterprises, Inc.*, Case NO. 5:23-cv-00905, 2023 WL 7003402 *3 (N.D. Ohio Oct. 24, 2023).

In this matter, Plaintiff's admission response verify that in-person HCP customer visits are an essential function of her position:

> REQUEST FOR ADMISSION NO. 4
> Admit that the Biosimilar Account Specialist position is customer-facing.
> ANSWER:
> Admit
>
> REQUEST FOR ADMISSION NO. 5
> Admit that you visited customers as a Biosimilar Account Specialist.
> ANSWER:
> Admit

12

(Dep. Plaintiff at Ex. 4, pg. 29). In fact, Organon mandated that Defendant's employees return to in-person sales. (Dec. at 14). Organon considered in-person sales to be a term of its contract with Defendant. (Dec. at 14).

Plaintiff was advised that because her position was HCP customer-facing, she could not be accommodated without a COVID-19 vaccine in that position. (Dep. Plaintiff at Ex. 12); (Dec. at 26). Due to Plaintiff's customer-facing role, the Board determined that Plaintiff could not be accommodated in her HCP customer-facing position without the COVID-19 vaccination. (Dec. at 26). The following reasons were communicated to Plaintiff:

- Plaintiff's position required regular in-person engagements with healthcare providers in medical offices and facilities to successfully perform in the job;

- Defendant faced legal risks if it permitted non-vaccinated employees to enter healthcare provider locations. For example, Plaintiff was selling to cancer centers and the spread of COVID-19 into these centers could be harmful to the patients;

- Customer targets in Plaintiff's sales territory required COVID-19 vaccinations at the time or were quickly moving to such a requirement;

- In-person customer visits were essential to Plaintiff's position; and

- Effective November 24, 2024, Organon required Defendant's employees who visited healthcare facilities on behalf of Organon to be fully vaccinated.

(Dep. Plaintiff at Ex. 12); (Dec. at 26).

Accommodating Plaintiff in her HCP customer-facing position would require Defendant to breach a customer contract and change the essential functions of Plaintiff's position. Accordingly, because Defendant can prove an undue burden, summary judgment should be granted in favor of Defendant on both claims asserted by Plaintiff.

## VI. CONCLUSION

Based on the above arguments and authorities, summary judgment is appropriate for Defendant on Plaintiff's failure to accommodate and retaliation claims under the ADA and O.R.C. § 4112. Plaintiff cannot prove that she had a sincerely held religious belief that conflicted with the Policy. *Finkbeiner v. Geisinger Clinic*, 623 F.Supp.3d 458 (M.D.Pa. 2022). In addition, Plaintiff was accommodated by Defendant through the job posting procedure. *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993). Finally, due to Defendant's customer contracts and the essential functions of Plaintiff's position, Defendant has proven an undue hardship. *Groff v. Dejoy*, 143 S.Ct. 2279, 2294 (2023). Accordingly, because there are no disputes as to any material facts and Defendant is entitled to judgment as a matter of law, summary judgment should be granted on both claims and this matter terminated.

Respectfully submitted,

*/s/ David A. Campbell*
David A. Campbell (0066494)
Andrea Hofer         (0101258)
Gordon Rees Scully Mansukhani, LLP
600 Superior Ave., East
Suite 1300
Cleveland, OH 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
Email: dcampbell@grsm.com
ahofer@grsm.com

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of April 2024, the foregoing *Defendant's Motion for Summary Judgment* was filed electronically. Notice of this filing will be sent by electronic mail.

*/s/ David A. Campbell*
David A. Campbell (0066494)

*One of the Attorneys for Defendant*
