IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NATALIE ISENSEE, | : | |
| | : | CASE NO. 3:22-cv-000370-TMR-CHG |
| Plaintiff | : | |
| v. | : | JUDGE THOMAS M. ROSE |
| | : | |
| AMPLITY, INC. | : | MAGISTRATE JUDGE CAROLINE H. GENTRY |
| | : | |

### DECLARATION OF KAREN McANDREWS

I, Karen McAndrews, being duly cautioned and sworn, hereby declare as follows:

1. I am the Director, US People Team for Defendant Amplity, Inc. ("Defendant").

2. Defendant is a Contract Medical and Commercial Organization that provides services to the pharmaceutical industry.

3. In simple terms, Defendant partners with global healthcare companies to build transformational solutions.

4. One example of this partnering relevant to the captioned-lawsuit is between Defendant and Organon. Organon is a global pharmaceutical company with a portfolio of therapies and products in women's health, biosimilars, and established brands across a wide array of conditions and diseases.

5. Defendant has a contract with Organon to help market and sell Organon's products to thousands of healthcare providers around the country.

6. Defendant provided Organon with a professional sales team for Organon's products.

7. Plaintiff Natalie Isensee ("Plaintiff") is a former employee of Defendant and was assigned to Defendant's Organon sales team.

1

EXHIBIT 2

8. Plaintiff's position with Defendant was as a Immunology Specialty Representative.

9. Plaintiff's position was also referred to as Biosimilar Account Specialist.

10. In this positon, Plaintiff was responsible for promoting Organon products in her region.

11. One group of products that Plaintiff sold were Organon's cancer-related products.

12. As a customer-facing role, Plaintiff was expected to meet with current and prospective Organon health care provider customers in person on a regular basis. Some of these customers were cancer centers treating cancer patients.

13. During the COVID-19 Pandemic, Plaintiff's position was remote. Virtually all pharma sales representatives like Plaintiff were remote during the pandemic and before vaccines were available as health care provider's offices were mostly closed to pharmaceutical sales representatives.

14. Upon the wide availability of a Covid-19 vaccine in 2021, health care providers again allowed pharmaceutical sales representatives to enter their offices under certain conditions, including often requiring a proof of Covid-19 vaccination. Accordingly, and in order to compete on an even basis with Organon competitors whose representatives were now going in person to see health care providers, in 2021, Defendant made the decision to go back to in-person promotion. . In fact, Organon and many of Defendant's customers mandated Defendant's employees return to in-person sales. Organon considered in-person sales to be a term of its contract with Defendant.

15. On October 5, 2021, Defendant announced its COVID-19 mandatory vaccination policy (the "Policy").

16. Under the Policy, employees based in the United States, like Plaintiff, had eight weeks to do one of the following: (1) Comply with the Policy and provide proof of the COVID-19 vaccination; (2) seek an exemption from the Policy based on religion or medical reasons; or (3) obtain a fully-remote position with Defendant.

17. In order to provide consistency, Defendant created a three member Exemption Review Board (the "Board") to review, approve, or deny exemption requests under the Policy.

18. The Board reviewed all exemption requests.

19. When the Policy was implemented, I held the HR Business Partner role with Defendant.

20. As an HR Business Partner, I worked directly with employees who sought exemptions under the Policy. In this role, I transferred information between the Board and the employee seeking the exemption under the Policy.

21. Plaintiff elected to seek a religious exemption from the Policy.

22. In addition, Plaintiff also sought to seek a fully remote position with Defendant. Unfortunately, Plaintiff was unable to find a fully remote position with Defendant. However, I worked with Plaintiff to try and locate an alternative positon up to the point when Plaintiff's employment with Defendant was terminated.

23. As to the exemption request, the Board asked that Plaintiff provide additional information relating to her religious beliefs. I phoned and emailed Plaintiff about this follow-up request, but she never provided any additional information to support her religious beliefs that conflicted with the Policy.

24. Attached is the email chain from November 15, 2021 when I provided Plaintiff with more details on what she needed to provide with respect to her religious beliefs. Plaintiff never provided this additional information.

25. However, due to Plaintiff's customer-facing role, the Board determined that Plaintiff could not be accommodated in her customer-facing position without the COVID-19 vaccination.

26. I communicated the following to Plaintiff verbally and in writing:

- Plaintiff's position required regular in-person engagements with healthcare providers in medical offices and facilities to successfully perform in the job;

- Defendant faced legal risks if it permitted non-vaccinated employees to enter healthcare provider locations. For example, Plaintiff was selling to cancer centers and the spread of COVID-19 into these centers could be harmful to the patients;

- Customer targets in Plaintiff's sales territory required COVID-19 vaccinations at the time or were quickly moving to such a requirement;

- In-person customer visits were essential to Plaintiff's position; and

- Effective November 24, 2024, Organon required Defendant's employees who visited healthcare facilities on behalf of Organon to be fully vaccinated.

27. All of the employees holding Plaintiff's position were treated in a similar manner – no employee was permitted to work in a customer-facing role under the Policy without the COVID-19 vaccination.

28. The reasons for this decision are as follows: (1) In person visits were an essential function of these positions; (2) In-person visits, at that time, without the COVID-19 vaccination placed healthcare providers, their patients, and other third parties at risk; (3) Defendant's contracts required in-person sales calls and the failure to perform these in-person sales calls would breach

Defendant's contracts; (4) Defendant did not have the staff to fill in for non-vaccinated employees on customer visits; and (5) it was administratively impossible to keep up with the vaccination policies for the thousands of customers Defendant solicited.

29. Plaintiff was treated fairly and consistently under the Policy.

I have read the foregoing declaration and I affirm under penalty of perjury under the laws of Pennsylvania and the United States of America that the foregoing is true and accurate to the best of my knowledge, information and belief.

*Karen McAndrews*
Karen McAndrews

3/25/2024
Date

# Karyn Agnelly

| | |
|---|---|
| **From:** | Karen McAndrews <karen.mcandrews@amplity.com> |
| **Sent:** | Monday, November 15, 2021 6:12 PM |
| **To:** | NATALIE ISENSEE |
| **Subject:** | RE: Vaccine Exemption |
| **Attachments:** | Amplity Vaccination Policy Request for Religious Exemption.pdf |

Hi Natalie:
Please see the attached added questions to the form. Let's plan to connect end of day tomorrow.
Thanks,
Karen

**From:** NATALIE ISENSEE <natalie.isensee@amplity.com>
**Sent:** Monday, November 15, 2021 3:26 PM
**To:** Karen McAndrews <karen.mcandrews@amplity.com>
**Subject:** Vaccine Exemption

Hi Karen,
I wanted to make sure that I had all my information correct regarding our call on Friday regarding my religious exemption. It is my understanding that my religious exemption was denied because it was found too not be sincere. Can you please explain to me why? I submitted several reasonings and scriptures behind my beliefs.

Thank you for your clarification,

Natalie Isensee
Biosimilar Account Specialist
937.570.8503
Natalie.Isensee@amplity.com



**Request for Religious Exemption Related to COVID-19 Vaccine**

Amplity Health (hereinafter the "Company") is committed to providing equal employment opportunities without regard to any protected status and a work environment that is free of unlawful harassment, discrimination, and retaliation. As such, the Company is committed to complying with all laws protecting employees' religious beliefs and practices. When requested, the Company will provide an exemption/reasonable accommodation for employees' religious beliefs and practices which prohibit the employee from receiving a COVID-19 vaccine, provided the requested accommodation is reasonable and does not create an undue hardship for the Company or pose a direct threat to the health and/or safety of others in the workplace and/or to the requesting employee.

To request an Exemption related to the Company's COVID-19 vaccination policy, please complete this form and return it to Human Resources (humanresources@amplity.com). This information will be used by Human Resources or other Company officials to engage in an interactive process to determine eligibly for and to identify possible accommodations. If an employee refuses to provide such information, the employee's refusal may impact the Company's ability to adequately understand the employee's request or effectively engage in the interactive process to identify possible accommodations.

1



**Part 1 – To Be Completed by Employee:**

Name: _____

Date of Request: _____

1. Please describe the nature of your objection to the COVID-19 vaccination requirement.




2. Would complying with the COVID-19 vaccination requirement substantially burden your religious exercise? If so, please explain how.




3. How long have you held the religious belief underlying your objection?




4. Please describe whether, as an adult, you have received any vaccines against any other diseases (such as a flu vaccine or a tetanus vaccine) and, if so, what vaccine you most recently received and when, to the best of your recollection.




5. If you do not have a religious objection to the use of all vaccines, please explain why your objection is limited to particular vaccines.




6. If there are any other medicines or products that you do not use because of the religious belief underlying your objection, please identify them.

2



7. Please provide any additional information that you think may be helpful in reviewing your request

In some cases, the Company will need to obtain additional information and/or documentation about your religious practice(s) or belief(s). We may need to discuss the nature of your religious belief(s), practice(s) and accommodation with your religion's spiritual leader (if applicable) or religious scholars to address your request for an exception.

**If requested, can you provide documentation to support your belief(s) and need for an accommodation?**

      _____ Yes        \_\_\_\_\_ No

**If no, please explain why:**

_____

_____

**Verification and Accuracy:**

**I verify that the information I am submitting in support of my request for an accommodation is complete and accurate to the best of my knowledge, and I understand that any intentional misrepresentation contained in this request may result in disciplinary action.**

**I also understand that my request for an accommodation may not be granted if it is not reasonable, if it poses a direct threat to the health and/or safety of others in the workplace and/or to me, or if it creates an undue hardship on the Company.**

Signature: _____

Print Name: _____ Date: _____



**Part 2 – To be completed by Human Resources Representative**

Date this Request Form Received by Human Resources: _____

Interactive Discussion Date(s) if applicable: _____

**Exemption granted?**  _____Yes  _____ No

Describe Accommodation:

_____

_____

_____

If Exemption granted, list required alternative safety precautions required:

_____

_____

If Exemption not granted, explain why:

_____

_____

Name of Amplity Representative: _____

Signature of Amplity Representative: _____

Date: _____