UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| NATALIE ISENSEE, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:22-cv-370 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| AMPLITY, INC., | : | |
| | : | |
| Defendant. | : | |

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 24)**

Presently before the Court is Defendant's Motion for Summary Judgment ("Motion") (Doc. No. 24). In the Motion, Defendant Amplity, Inc. ("Amplity") seeks summary judgment on Plaintiff Natalie Isensee's ("Isensee") failure to accommodate claims predicated on religious discrimination under federal and state law. (Doc. No. 24 at PageID 135.) Amplity argues that Isensee cannot prove she held sincere religious beliefs, that Amplity accommodated her by offering her the opportunity to find an alternate position, and that Isensee's desired accommodation represented an undue hardship. (*Id*. at PageID 144-49.)

For the reasons discussed below, Defendant's Motion for Summary Judgment is **DENIED**.

**I.      BACKGROUND**

Isensee worked for Amplity from January 4, 2020 to December 10, 2021 as a Biosimiliar Account Specialist. (Doc. No. 27-1 at PageID 475-76.) Amplity is healthcare company that partners with other healthcare companies to "build transformative solutions." (Doc. No. 24-2 at PageID 282.) Relevant to Isensee, Amplity partners with another healthcare company named Organon, which has "a portfolio of therapies and products in women's health, biosimilars, and

1

established brands across a wide array of conditions and diseases." (*Id*.) Isensee was responsible for marketing and selling pharmaceuticals on behalf of Organon. (*Id*.)

At the beginning of Isensee's employment, she had in-person interactions with healthcare providers to whom she marketed and sold products. (Doc. No. 24-1 at PageID 211.) Beginning on March 15, 2020, due to the COVID-19 pandemic, Isensee's interactions with her healthcare provider customers were conducted remotely. (Doc. No. 27-1 at PageID 461-62.)

On October 5, 2021, Amplity implemented a mandatory COVID-19 vaccination policy. (Doc. No. 24-1 at PageID 271-72.) As part of the policy, employees were given "8 weeks to become fully vaccinated or receive approval for an accommodation." (*Id*.) Amplity further created a three-member Exemption Review Board to review exemption requests. (Doc. No. 24-2 at PageID 284.)

Isensee submitted a request for exemption on October 7, 2021. (Doc. No. 24-1 at PageID 274-76.) Isensee, a non-denominational Christian, asked for religious exemption from the vaccine policy and cited various portions of the bible in support of her request. (*Id*. at PageID 275-76.) The request was also signed by her pastor at the time, Darin Boldin. (*Id*.) The request went to Karen McAndrews ("McAndrews"), an Amplity HR business partner, who forwarded the request to Erica Smith ("Smith"), a senior HR director at Amplity. (Doc. No. 25-1 at PageID 303-304.) Smith then passed the request along to the Exemption Review Board. (*Id*.)

On November 12, 2021, McAndrews informed Isensee that Amplity would be unable to accommodate her request for an exemption. (Doc. No. 26 at PageID 414.) At that time, McAndrews informed Isensee that Amplity could not provide an accommodation for three reasons:

2

- The Biosimilar Account Specialist role requires regular in-person engagements with HCPs in medical offices and facilities to successfully perform in the job. Engaging in these interactions unvaccinated and on behalf of the company puts you and the company at great risk.
- Targets in the role's territory require vaccination now or will require in the near future to access. These in-person visits are the primary mission of the company, and to avoid those visits would change the fundamental nature of the company and its services – leading to an undue hardship on Amplity.
- In addition, effective November 24, Organon requires vaccination of Amplity employees representing their product before calling on health care facilities and physicians' offices.

(*Id*.)

Isensee emailed McAndrews on November 23, 2021, appealing the decision to deny her exemption request. (Doc. No. 26 at PageID 413.) The next day, November 24, 2021, McAndrews responded, explaining that during the November 12, 2021 conversation she had explained, "the Exemption Review Board did not believe [the religious accommodation] criteria was met." (*Id*. at PageID 414.) McAndrews further explained that on November 15, 2021, she had emailed Isensee additional questions and noting that Amplity had not received any additional information regarding her religious accommodation request. (*Id*. at PageID 414-15.) Finally, McAndrews stated: "As I had explained, we are happy to work with you on finding another job within Amplity that is 100% remote that you are qualified for." (*Id*. at PageID 415.)

On December 10, 2021, McAndrews emailed Isensee explaining that there were no roles available at Amplity. (*Id*. at PageID 417.) Specifically, McAndrews explained that Amplity had no positions available that were 100% remote and that anticipated new openings had been put on hold. (*Id*.) McAndrews further explained that Amplity could not keep Isensee on an indefinite leave of absence. (*Id*.) Consequently, Isensee was terminated from Amplity, effective December 10, 2021. (*Id*.)

On December 15, 2022, Isensee filed her Complaint ("Complaint") in this Court. (Doc.

3

No. 1.) Amplity filed the present Motion on April 1, 2024 (Doc. No. 24) and Isensee filed her response on April 22, 2024 (Doc. No. 28). Amplity filed its reply on May 7, 2024.[1] (Doc. No. 29.) The matter is fully briefed and ripe for review and decision.

## II.　LEGAL STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought" and that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, affidavits or sworn declarations, and admissions on file, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a), (c). The burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In opposing summary judgment, the nonmoving party cannot rest on its pleadings or merely reassert its previous allegations. *Id*. at 248-49. It also is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

---

[1] The Court would be remiss if it did not note that Amplity's reply was untimely. The reply did not raise any new arguments or evidence, therefore, the Court will not strike the filing. Counsel should be careful to timely file in the future.

A party's failure "to properly address another party's assertion of fact as required by Rule 56(c)" can result in the court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). Additionally, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In ruling on a motion for summary judgment, it is not the judge's function to make credibility determinations, "weigh the evidence[,] and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 255. In determining whether a genuine issue of material fact exists, the court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255; *Matsushita*, 475 U.S. at 587; *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). However, the "mere existence of a scintilla of evidence in support of the" nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, therefore, "asks whether reasonable jurors could find by a preponderance of the evidence that the" nonmoving party is entitled to a verdict. *Id*.

### III. <u>ANALYSIS</u>

Amplity makes three arguments regarding Isensee's accommodation claims. First, Isensee cannot prove that she had a sincerely held religious belief. (Doc. No. 24 at PageID 145-47.) Second, an accommodation was provided to Isensee through the option to search for alternative job opportunities with Amplity. (*Id*. at PageID 147.) Third, permitting Isensee to remain in her position would have been an undue hardship for Amplity. (*Id*. at PageID 148-49.)

5

### A. Religious Discrimination Claim Standard

Isensee alleges religious discrimination claims under both Title VII, 42 U.S.C. § 2000e, *et seq.*, and Ohio Rev. Code § 4112, *et seq.* The Ohio Supreme Court has held that federal caselaw interpreting Title VII is generally applicable to cases involving violations of § 4112. *Ohio Civ. Rights Comm'n v. David Richard Inghram, D.C., Inc.*, 69 Ohio St. 3d 89, 93, 630 N.E.2d 669, 672 (Ohio 1994) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981)).

"The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). To establish a *prima facie* case of religious discrimination a plaintiff must show: "(1) that the employee holds a sincere religious belief that conflicts with an employment requirement, (2) that the employee informed the employer about the conflict, and (3) that the employee was discharged or disciplined for failing to comply with the requirement." *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 355-56 (6th Cir. 2020) (citing *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002)). Once an employee has established a *prima facie* case, the employer has the burden "to show that it could not reasonably accommodate the employee without undue hardship." *Virts*, 285 F.3d at 516 (citations omitted).

Amplity does not dispute the second and third element of the test, but does challenge Isensee's ability to prove she held a sincere religious belief in this instance. Therefore, the Court will first turn to whether Isensee held a sincere religious belief that the COVID-19 vaccine violated her religious beliefs.

6

### i. Sincerely Held Religious Beliefs

Amplity first argues that Isensee cannot show she held a sincere religious belief. (Doc. No. 24 at PageID 145-47.) Instead, Amplity contends that Isensee learned of the COVID-19 side effects from the internet and friends. (*Id.* at PageID 146.) Moreover, Isensee's objections to the vaccine, in Amplity's view, are based "on scientific and moral grounds that are masked in bible verses." (*Id.*)

In response, Isensee argues that she is a devout Christian who has not been vaccinated as an adult due to her religious beliefs and has not had her children vaccinated. (Doc. Nos. 28 at PageID 570; 27-1 at PageID 443, 456-58.) She further argues that her objection to the COVID-19 vaccine was predicated on the belief that it would require her to place a foreign substance containing "aborted fetal cells and other unknown substances" in her body. (Doc. Nos. 28 at PageID 571; 27-1 at PageID 483-84.) Finally, Isensee points to the bible verse quoted in her accommodation request and the signature of her pastor, Boldin, as further evidence of the sincerity of her beliefs. (Doc. Nos. 28 at PageID 571; 26 at PageID 411; 27-1 at PageID 487-88.)

For a plaintiff to hold a sincere religious belief that conflicts with an employment requirement, they must "show that it was the religious aspect of her conduct that motivated her employer's actions." *Lawhead v. Brookwood Mgmt. Co., LLC*, No. 5:22-cv-00886-JRA, 2023 U.S. Dist. LEXIS 54355, at *7, 2023 WL 2691718, at *3 (N.D. Ohio Mar. 29, 2023) (citing *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009)). To determine whether the religious belief is one that qualifies for an accommodation, the court must look to whether "the beliefs professed by a claimant are sincerely held and whether they are, 'in [their] own scheme of things,' religious." *Equal Emp't Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 799 (M.D. Tenn. 2020) (citations omitted). While the truth of a belief

is not open to question, there remains the significant question of whether it is "truly held." *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) ("*Union Independiente*") (citing *United States v. Seeger*, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)). Though courts should not inquire into the validity or plausibility of a belief, the court should decide whether the beliefs are truly held and whether they are religious. *Holt v. Hobbs*, 574 U.S. 352, 360, 135 S.Ct. 853, 190 L.Ed.2d 747 (2015). Courts differentiate between views that are religious in nature from those views that are "essentially political, sociological, or philosophical." *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 490 (3rd Cir. 2017) (quoting *Seeger*, 380 U.S. at 165).

The record is conflicting when it comes to the sincerity of Isensee's religious beliefs as they relate to vaccinations in general. For instance, Isensee states that when she considers getting a vaccination for her children, she sits down with their nurse practitioner and determines whether the benefits of the vaccination outweighs the drawbacks. (Doc. No. 27-1 at PageID 484-85.) This is consistent with Isensee's general approach to medical treatment, which is predicated on weighing the risks after a conversation with her physician. (*Id*. at PageID 497.)

However, Isensee alternatively states that she has religious objections to vaccines. (*Id*. at PageID 496-97.) As to the instant matter, Isensee cites to multiple portions of the bible in her exemption request had and her pastor sign the form with her. (Doc. No. 26 at PageID 411-12.) Isensee also pointed to her religious concern over the use of stem cells in the vaccine in both her exemption form and deposition. (*Id*.; Doc. No. 27-1 at PageID 483.)

While the Court does not doubt Isensee's faith, the record is conflicted as to how she made the decision to seek an accommodation. Isensee stated her in deposition that her research on the COVID-19 vaccine did not yield any studies or prescribing information. (Doc. No. 27-1 at PageID

8

484.) She further stated that, "a lot of friends and a lot of people on the Internet that said that they were having side effects in regards to the COVID vaccine." (*Id.*) Moreover, her exemption request itself states:

> As the Covid-19 shots are still in the experimental phase of study, I do not believe it would be right for me to introduce theses substance into my body because they have not sufficiently been proven to me to be safe and effective. Rather, I believe they may be harmful to my body.

(Doc. No. 26 at PageID 411.)

Ultimately, a determination on the sincerity of Isensee's religious beliefs would require this Court to weigh her credibility and determine whether her objections were based on religion and reinforced by a lack of medical information on the vaccine or whether her objections were truly medical and masked by religious language. "Credibility issues such as the sincerity of an employee's religious belief are 'quintessential fact questions.' As such, they ordinarily should be reserved for the factfinder at trial, not for the court at summary judgment." *Publix*, 481 F. Supp. 3d at 700 (citing *Union Independiente*, 279 F.3d at 56)); *see also Reeves v. Sanderson Plumbings Prods.*, 503 U.S. 133, 150, 120 S. Ct. 2097 (2000) (citing *Anderson*, 477 U.S. at 255; *Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 503 (6th Cir. 2014)) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

Consequently, the Court finds genuine disputes of material fact exist as to whether Isensee held a sincere religious belief.

### ii. Reasonable Accommodations

Amplity next argues that, regardless of whether Isensee can prove her *prima facie* case, her claims must fail because Amplity accommodated her by being giving her the opportunity to seek out alternative positions. (Doc. No. 24 at PageID 147.) In response, Isensee argues that it was

9

unnecessary for her to seek another position because Amplity could have accommodated her in the role she had at the time. (Doc. No. 28 at PageID 575.) Moreover, she contends that the opportunity to seek a new position did not accommodate her religious practices. (*Id*.)

Under Title VII, an employer is required to make reasonable accommodations for the religious practices of its employees. *Crider v. Univ. of Tennessee, Knoxville*, 492 F. App'x 609, 611-12 (6th Cir. 2012). "Once an employer has offered a reasonable accommodation, it has met its duty under Title VII." *Id.* at 612 (citing *McGuire v. Gen. Motors Corp.*, 956 F.2d 607, 609 (6th Cir.1992)). "[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S. Ct. 367, 372, 93 L. Ed. 2d 305 (1986). When the employer demonstrates such a reasonable accommodation was offered, the employer need not show that alternative accommodations would result in undue hardship. *Id*. Whether an accommodation is reasonable is determined on a case-by-case basis and is generally a question of fact for a jury. *Crider*, 492 F. App'x at 612.

The Sixth Circuit has held that a reasonable accommodation, "may include… a transfer to another position which preferably does not adversely affect the employee." *Id*. (citing *Draper v. United States Pipe and Foundry Co.*, 527 F.2d 515, 519–520 (6th Cir.1975)). Amplity further cites to several other circuits for the proposition that affording the opportunity to seek alternative positions is sufficient to accommodate the employee. (Doc. No. 24 at PageID 147) (citing *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993); *Bruff v. North Mississippi Health Servs., Inc.*, 244 F.3d 495, 502 (5th Cir. 2001); *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 227 (3d Cir. 2000); *Telfair v. Fed. Express Corp.*, 567 F. App'x 681, 684 (11th Cir. 2014)).

The cases cited by Amplity are distinguishable from the matter at hand, however. In all of the cases cited above, the employee was offered the opportunity to apply for positions and either

neglected to do so or refused to cooperate with the defendant. *See Wright*, 2 F.3d at 217 (plaintiff refused to apply for two other positions that would not have required him to work on the sabbath); *Bruff*, 244 F.3d at 502 (plaintiff was not successful in obtaining one position and refused to apply for other open positions); *Shelton*, 223 F.3d at 227 (plaintiff did not uphold her duty to cooperate in finding an accommodation where open positions were available, but she refused to meet with human resources); *Telfair*, 567 F. App'x at 684 (plaintiff refused the first offer of an alternative position and failed to apply for any other open positions with defendants).

The key distinction between the cases cited by Amplity and the matter at hand is the availability of open positions. The record is unclear on this point, but between the time Isensee was informed her exemption had been denied, on November 12, 2021, and when she was terminated, on December 10, 2021, the evidence tends to show that there were no open positions with Amplity. (Doc. No. 26 at PageID 417.) McAndrews emailed Isensee on December 10, 2021 and stated:

> I learned R1952 was filled (the neuroscience role that was a non-Amplity position). Unfortunately, Amplity has no current opening that are 100% remote at this time. As we discussed, there may be some openings in the future; however, we do not have an anticipated timeframe of when these may become available. I have learned that new openings we had anticipated are now on hold.

(Doc. No. 26 at PageID 417.)

It is entirely possible that there were positions that Isensee could have applied for, but refused to do so. The record presently before the Court indicates that there were no job openings. It is not a reasonable accommodation to suggest that a plaintiff could apply for positions that do not exist or where the prospect of those positions existing is uncertain. This would undermine the requirement that the employer find a reasonable accommodation. At the very least, there is a question of fact as to whether there were any available positions at Amplity that Isensee could

have applied for between November 12, 2021 and December 10, 2021 that may have reasonably accommodated Isensee.

### iii. Undue Hardship

Amplity finally argues that it could not accommodate Isensee's religious beliefs without undue hardship. (Doc. No. 24 at PageID 148.) Specifically, Amplity argues that accommodating Isensee would have violated the terms of their agreement with Organon and it would have changed the essential functions of the position. (*Id*. at PageID 148-49.) In response, Isensee argues that the declarations from Amplity's employees, cited in the Motion, leave open questions of fact as to whether it would have suffered undue hardship in accommodating Isensee's religious beliefs. (Doc. No. 28 at PageID 575-581.)

Title VII requires an employer to accommodate an employee's religious practice "unless doing so would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 468, 143 S. Ct. 2279 (2023) (quoting 42 U.S.C. § 2000e(j)); *see also Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). The Supreme Court has held that a court must take "into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" *Groff*, 600 U.S. at 470-71 (citation omitted). One particular consideration being whether the result would be a "substantial increased costs in relation to the conduct of its particular business." *Id*. (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, n. 14, 97 S. Ct. 2264 (1977)). Even with this context, "'undue hardship is something greater than hardship, and an employer does not sustain his burden of proof merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine.'" *Crider*, 429 F. App'x at 614 (quoting *Draper*, 527 F.2d at 520).

Isensee does not specifically state in her opposition what accommodation would be appropriate, but her opposition does cite her November 24, 2021 email to McAndrews. (Doc. No. 28 at PageID 566.) In the email Isensee states, "I have contacted all my hospitals that I call on and they are all allowing their employees to file religious exemptions. Many of the employees that I have spoken with have been granted their religious exemption with terms of wearing a mask, testing weekly, or both." (Doc. No. 26 at PageID 416.) Isensee further states that she was not interacting with her customers in person at the time of her termination. (Doc. No. 28 at PageID 568.)

Amplity, conversely, argues that Isensee's role was customer-facing and that the client, Organon, had mandated the return of Amplity employees to in-person sales. (Doc. No. 24 at PageID 149.) Moreover, Amplity communicated to Isensee that there could be legal risks if Amplity permitted a non-vaccinated employee to enter healthcare locations and customers in her territory required vaccinations. (*Id*.) Finally, Amplity contends that in-person customer visits were essential to Isensee's position. (*Id*.).

Both Isensee and Amplity's positions are undermined by one simple, but destructive, problem: they have not provided one ounce of admissible proof for their contentions. Both Parties rely on witnesses who testify to what others told them. This is textbook hearsay, "an out-of-court statement… offered to prove the truth of the matter asserted in the statement." *Grizzard v. Nashville Hospitality Cap., LLC*, No. 3:18-cv-34, 2021 U.S. Dist. LEXIS 142567, at *16, 2021 WL 3269955, at *9 (M.D. Tenn. Jul. 30, 2021) (citing Fed. R. Evid. 801(c)). In the Sixth Circuit, "'hearsay evidence cannot be considered on a motion for summary judgment.'" *Grizzard*, 2021 U.S. Dist. LEXIS 142567, at *16, 2021 WL 3269955, at *9 (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)); *see also Madison America, Inc. v. Preferred Med. Sys., LLC*, 548

F. Supp. 2d 567, 577 (W.D. Tenn. 2007) (finding that a witness' deposition testimony regarding statements from his conversations with prospective customers were inadmissible hearsay and could not be considered in ruling on a motion for summary judgment); *Kouider on behalf of Y.C. v. Parma City Sch. Dist. Bd. of Educ.*, 480 F. Supp. 3d 772, 782 (N.D. Ohio Aug. 19, 2020) (holding that a witness' deposition testimony regarding a specific statement from a conversation with her sister was inadmissible hearsay and could not be considered in ruling on a motion for summary judgment).

Isensee's argument appears to be that she could have been accommodated by being allowed to "wear[] a mask, test[] weekly, or both" because employees at the hospitals she visited were permitted to do so. Aside from the fact that these assertions are hearsay, Isensee has submitted no proof to show that this was true. These employees may have misunderstood hospital policy. Equally, this policy may have only applied to employees and outside professionals may have been subject to different requirements. Simply put, based on the record before it the Court cannot determine whether this accommodation would have even been possible because it is predicated on hearsay statements from identified individuals.

On the other side, Amplity submits the declaration of McAndrews for the proposition that, "Organon and many of [Amplity]'s customers mandated [Amplity]'s employees return to in person sales." (Doc. No. 24-2 at PageID 283.) Beyond the conclusory declaration of McAndrews, there are no emails, contracts, or documents to support the assertion that Organon considered it a breach of their agreement to have salespeople interacting with customers remotely. Amplity simply contends, through McAndrews, that it had been "mandated." Similarly, Amplity offers no proof that customers were requiring vaccinations in the areas covered by Isensee. Like Isensee, Amplity's contentions are based entirely on hearsay.

The loss of a customer likely would be an undue hardship for Amplity when viewing the practical effects it would have on the company. *See Groff*, 600 U.S. at 470-71. The issue is there is no evidence that Amplity would have lost Organon as a customer if it had allowed Isensee to continue to work remotely. Equally, in the event Organon did view in-person customer visits as a material term of their agreement with Amplity, there is no evidence that Isensee's plan to wear masks and be tested was viable.

Consequently, a genuine dispute of material fact exists as to whether accommodating Isensee would have been an undue hardship and whether a reasonable accommodation existed.

### IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion for Summary Judgment (Doc. No. 24).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, May 13, 2024.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE